# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 29, 2014 Session

## STATE OF TENNESSEE v. DAVID WAYNE RICHARDS

**Direct Appeal from the Criminal Court for Hawkins County**
**No. 12CR217     John F. Dugger, Jr., Judge**

---

**No. E2013-01054-CCA-R3-CD-FILED-MARCH 25, 2014**

---

The appellant, David Wayne Richards, pled guilty in the Hawkins County Criminal Court to possession of a Schedule III controlled substance with intent to deliver.  Pursuant to the plea agreement, he was sentenced as a Range I, standard offender to two years, one day with the manner of service to be determined by the trial court.  The trial court ordered that the appellant serve his sentence in confinement.  On appeal, the appellant contends that the trial court erred by denying his request for judicial diversion or alternative sentencing.  Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

J. Matthew King, Kingsport, Tennessee, for the appellant, David Wayne Richards.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; C. Berkeley Bell, District Attorney General; and Alex Pearson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In April 2013, the appellant pled guilty to possession of a Schedule III controlled substance, dihydrocodeinone, with intent to deliver, a Class D felony. At the guilty plea hearing, the State read the appellant's statement to police into the record. According to the statement, the appellant, who was an employee of the Hawkins County Sheriff's Department

and worked in the county jail at the time of the offense, mentioned to a male inmate that the appellant had been prescribed Lortab for his knee. The man tried to persuade the appellant to give him some of the pills, but the appellant refused. Sometime after the man was released from jail, he telephoned the appellant at the jail and asked if the appellant had any Lortabs the appellant wanted to "get rid of." The appellant told the man that he had some pills but that he had "hadn't ever done anything like that." The next night, the man telephoned the appellant again, wanting the Lortabs. Ultimately, the appellant agreed to sell him 1,200 Lortabs for $7,200, and they arranged to meet in a Food Lion parking lot. When the appellant arrived, two police officers stopped him. The appellant was cooperative and told them about the pills in his truck.

After the State read the appellant's statement, the appellant acknowledged that it was an accurate account of the evidence. The trial court accepted the plea, imposed the agreed-upon sentence of two years, one day, and immediately proceeded to sentencing.

Thomas H. Williams testified for the appellant that he had known the appellant since 1974. Williams and the appellant were members of a volunteer fire department, and the appellant played Santa Claus for the department. Williams said that the appellant would do "anything he was told to do by a superior officer in the department" and that the appellant was "as good a fire department member as we had." Williams said that the appellant was an alderman, that everyone "[thought] the world" of the appellant, and that the appellant never hesitated to help anyone. Williams said he did not agree with what the appellant had done but asked that the court be lenient because the appellant "made a mistake, and we've all made mistakes."

Hugh Jarvis testified that he was a lifetime member of the Surgoinsville Volunteer Fire Department and had known the appellant since the appellant was a young boy. He described the appellant's character as excellent and said that the appellant's offense had not affected his opinion of the appellant because "I still think David is a good guy." He said the offense was not a true reflection of the appellant and that the appellant had helped his community by being a volunteer of the fire department. He said that he had never known the appellant to drink alcohol, that he was surprised by the offense, and that "I don't see him doing it again."

Charles Ryan Wyndham testified that he met the appellant when they worked together at Houston Express, an expedited service in Surgoinsville. He said that he and the appellant became good friends and that the appellant helped others. He said that the appellant was a good person and that he thought the appellant was "just presented with an opportunity to make money." The appellant was always employed and often played Santa Claus for community events. However, after the appellant was charged in this case, he was no longer

allowed to play Santa in the community parade, which upset the appellant. Wyndham said that the appellant suffered from diabetes and had a problem with his knee but that the appellant did not use his health as an excuse. He described the appellant as hard-working and said the appellant would continue to work if given the opportunity.

Glenn Day testified that he was about four years younger than the appellant and that he had known the appellant his entire life. He said the appellant had a good character and was willing to help anyone. Day's girlfriend used to rent a house from the appellant, and the appellant was a fair landlord and offered to mow her yard. Day was shocked when he learned about the charge in this case and discussed the offense with the appellant. The appellant knew what he did was wrong, and Day thought the appellant got "caught up in the idea of helping somebody else."

Billy Jo Richards, the appellant's wife, testified that she was a school custodian and that the appellant was the stepfather to her son, who was twenty-two years old at the time of the appellant's guilty plea. She said that the appellant had raised her son since he was three years old, that the appellant always treated him like the appellant's biological child, and that the appellant had been a very good father. She said she was shocked to learn about this case, that the appellant had tried to help others, and that the appellant had "always been there for his mom and dad, for my parents, for our son, for me." She said that the appellant suffered from high blood sugar, that he took medication for high blood pressure, and that he was taking antidepressants. He also had problems with his knees and sleep apnea. In 2002, the appellant injured his knee and was prescribed hydrocodone. The pills that the appellant tried to sell in this case had been prescribed to him. She said the appellant was a good man but made a bad mistake. The appellant did charity work for children's homes and played Santa Claus one time for a little boy with leukemia.

On cross-examination, Richards testified that the appellant did not take hydrocodone every day and only took the pills as needed. The appellant's prescription refilled automatically.

The appellant testified that he used to make "fairly good money" as an over-the-road truck driver but that he quit his job in order to stop traveling and take care of his elderly parents. The appellant went to work for the sheriff's department and took a $40,000 pay cut. While the appellant was working in the jail, one of the inmates noticed he was limping. The appellant told the inmate that he suffered from knee pain due to a torn meniscus. The inmate wanted to know what the appellant was taking for the pain, and the appellant told him about the medication. After the inmate was released from jail, he telephoned the appellant and told the appellant that his wife was in pain and could not get any medicine. He asked if the appellant would sell him some pills, and the appellant agreed. The appellant acknowledged

that all of the pills had been prescribed to him and said that he had a large amount of them because his prescription was "on auto refill." He said that he was having financial problems after he left his trucking job, that the inmate offered him $7,200 for the pills, and that "that was a fortune, at the time, to me. It would take care of a lot of things that I needed to get caught up on." He said that he had always been a good person and tried to help people and that the crime was not a true reflection of himself. He said he was "appall[ed]" about what he had done and asked for mercy from the court. On cross-examination, the appellant acknowledged that he agreed to sell a very large quantity of pills to the inmate.

The trial court stated that it had reviewed the mitigating factors in Tennessee Code Annotated section 40-35-113 and that it did not think any of the factors applied. Regarding enhancement factors, the trial court applied and gave great weight to factor (14), that the appellant abused a position of public trust. See Tenn. Code Ann. § 40-35-114(14). Regarding that factor, the trial court stated as follows:

> You were a man with a badge here in Hawkins County. . . . And you made a mistake, but you made a big mistake. You made a greedy mistake. This was a crime of greed. $7,200, it was a $7,200 drug deal that was set up. And you were a man with a badge doing a drug deal for $7,200. I mean, this is huge. Most of the drug cases that the Court sees are not near $7,200. Most of them are less than 1,000. . . . You made a mistake but you're also a man with a badge, a position of trust that was put into you by the sheriff appointing you as an officer, and to set up a large drug deal. And this was a large drug deal. A [large] amount of money, $7,200, and a lot of pills.
>
> But you're a man with a badge doing a drug deal. I mean, absolutely the Court cannot grant you a judicial diversion or alternative sentencing for that reason.

The trial court found that the appellant was "a pretty good guy," was amenable to correction, and had some physical problems. However, the court stated that other people needed to be deterred from this type of behavior and that alternative sentencing "would not serve the interest of the public." The trial court noted that many people in confinement had been sentenced to jail for "a handful of pills" and stated, "It does not serve for you to get a judicial diversion or alternative sentencing." The trial court ordered that the appellant serve his sentence in confinement.

## II. Analysis

A.  Judicial Diversion

First, the appellant contends that the trial court erred by denying his request for judicial diversion, arguing that the court did not consider all of the required factors. The appellant also contends that the trial court should not have considered the need for deterrence as a factor supporting the denial of diversion.  The State argues that the record reflects that the trial court considered all of the factors and that the court determined that the nature and circumstances of the offense, the appellant's abuse of a position of public trust, and the deterrence value to the appellant and others weighed against judicial diversion. Additionally, the State argues that this court should apply the standard of review from State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012), in which our supreme court ordered a presumption of reasonableness to within range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act.  We conclude that the trial court did not abuse its discretion by denying judicial diversion.

Tennessee Code Annotated section 39-17-417(a)(4) provides that it is an offense for a person knowingly to possess a controlled substance with intent to sell.  Dihydrocodeinone is a Schedule III controlled substance.  See Tenn. Code Ann. § 39-17-410(e)(1)(D). Possessing a Schedule III drug with intent to sell in violation of section 39-17-417(a) is a Class D felony.  Tenn. Code Ann. § 39-17-417(d)(1).

Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(B)(i), a defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty or nolo contendere to a Class C, D, or E felony; has not previously been convicted of a felony or a Class A misdemeanor; and is not seeking deferral for a sexual offense.  Additionally, in determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, (6) the deterrence value to the defendant and others, and (7) whether judicial diversion will serve the interest of the public as well as the defendant.  State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)).  The record must reflect that the trial court has taken all of the factors into consideration, and "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision."  Id.  Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others."  Id.

We recognize that this court has been split regarding the proper standard of review when addressing judicial diversion. One rationale applies the standard announced in Bise,

abuse of discretion with a presumption of reasonableness. See State v. Paresh J. Patel, No. M2012-02130-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 588, at **11-12 (Knoxville, July 10, 2013); State v. Collier Smith, No. W2012-01455-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 409, at *12 (Jackson, May 16, 2013), State v. Lewis Green, No. W2011-02593-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 290, at **27-28 n.1 (Jackson, Mar. 28, 2013); State v. Kiara Tashawn King, No. M2012-00236-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 192, at *19 (Nashville, Mar. 4, 2013), perm. to appeal granted, (Tenn. 2013). The other rationale applies the standard announced in Electroplating, Inc. and Parker, abuse of discretion with no presumption of reasonableness. See State v. Steven Matthew Messer, No. E2013-00647-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 46, at **8-9 (Knoxville, Jan. 22, 2014); State v. Shanice L. Dycus, No. M2012-02297-CCA-R3-CD, 2013 Tenn. Crim. App. LEXIS 822, at *20 (Nashville, Sept. 25, 2013). Regardless, we conclude that the trial court did not abuse its discretion under either standard of review.

The trial court specifically addressed the appellant's amenability to correction and physical health. The trial court also inherently addressed the appellant's social history, stating that he had "a lot of good friends," had played Santa Claus, and was "a pretty good guy." Earlier during the hearing, the trial court had noted that the appellant did not have a prior criminal history, which obviously weighed in favor of granting judicial diversion. However, the trial court's comments demonstrated that it was greatly troubled by the circumstances of the offense. The trial court stated that it was "shock[ed]" by the number of Lortabs and repeatedly referred to the large amount of money and pills involved. We note that the nature and circumstances of an offense alone may support a denial of judicial diversion. State v. Kyte, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993).

The trial court also found that the deterrence value to others weighed against judicial diversion due to the extreme problem in Tennessee of people selling their prescription pills. Finally, the trial court found that judicial diversion would not serve the interest of the public or the defendant, stating,

> But you're a man with a badge doing a drug deal. I mean, absolutely the Court cannot grant you a judicial diversion or alternative sentencing for that reason. How does it look for the whole judicial system for a man with a badge to do a large drug deal, larger than most of the other people in this whole district and nothing happen, don't go to jail, but somebody dealing two pills goes to jail? . . . I mean, this is 1,315 pills. That is a lot of pills. . . . Absolutely it does not serve the interest to the public. It does not serve for you to get a judicial diversion or alternative sentencing.

The trial court stated that the appellant had abused a position of public trust, and it gave great weight to that enhancement factor. See Tenn. Code Ann. § 40-35-113(14).

The appellant claims that his position as an officer should not be held against him because he was "an off-duty law enforcement officer who was not participating in duties of public employment at the time of the commission of the offense." However, the appellant met the buyer, a jail inmate, while the appellant was on duty and was supposed to be supervising the inmate. After the buyer was released from confinement, he telephoned the appellant at least twice at the jail. During the last call, the appellant agreed to sell his Lortabs. The mere fact that the appellant was off duty when he tried to deliver the Lortabs is unavailing. We agree with the trial court that the appellant abused a position of public trust and that the public's interests are not served by granting judicial diversion in this case. In sum, the record reflects that the trial court gave due consideration to all of the appropriate factors and supports the trial court's decision to deny the appellant's request for judicial diversion.

We note that during oral arguments, the appellant argued that this case is similar to State v. Stanley Jason Daniels, No. E2013-00694-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 32 (Knoxville, Jan. 16, 2014), in which this court recently reversed a trial court's denial of a defendant's request for judicial diversion for his conviction of sexual contact with an inmate and remanded the case for further proceedings. However, the instant case is significantly different from Daniels. In Daniels, the record did not reflect that the trial court considered all of the judicial diversion factors, and the court did not explain why the single factor weighing against judicial diversion, that granting judicial diversion did not serve the interest of the public, outweighed the several factors supporting judicial diversion. Stanley Jason Daniels, No. E2013-00694-CCA-R3-CD, 2014 Tenn. Crim. App. LEXIS 32, at *17. Moreover, the trial court's explanation for denying judicial diversion in Daniels indicated that the court denied diversion based solely upon the defendant's position as a law enforcement officer when the legislature had specifically contemplated that law enforcement officers convicted of sexual contact with an inmate were eligible for judicial diversion. Id. at *18. Such is not the case for the crime at issue before us. Therefore, the trial court's denial of the appellant's request for judicial diversion is affirmed.

### B. Alternative Sentencing

Finally, we will address the appellant's contention that the trial court erred by denying his request for alternative sentencing. In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved;

(5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, in 2012, our supreme court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Subsequently, the court specifically held that the abuse of discretion standard, with a presumption of reasonableness, applies to a review of a denial of alternative sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be

considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The record demonstrates that the trial court denied alternative sentencing primarily by finding that confinement was necessary to avoid depreciating the seriousness of the offense. Specifically, the trial court denied alternative sentencing because the appellant was "a man with a badge" who tried to "do a large drug deal" involving a "shocking amount" of pills. Based on our supreme court's decision in Bise and Caudle, we must conclude that the appellant has failed to demonstrate that the trial court abused its discretion by denying his request for alternative sentencing.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE